UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. 09-177 |
| v. | * | SECTION:   "N" |
| DANQUELL MILLER | * | |

\* \* \*

GOVERNMENT'S MOTION TO RECONSIDER
ORDER GRANTING RE-SENTENCING

**NOW INTO COURT**, comes the United States of America, appearing herein through the undersigned Assistant United States Attorney, who, pursuant to Rule 59 of the Federal Rules of Civil Procedure, respectfully moves this Court to reconsider, alter, and amend its Order (Rec. Doc. No. 356), which granted petitioner-defendant Danquell Miller's motions filed pursuant to 18 U.S.C. § 3582(c)(2) and 28 U.S.C. § 2255 and ordered re-sentencing in light of the Fair Sentencing Act of 2010 ("FSA") and *Dorsey v. United States*, 132 S.Ct. 2321 (2012).[1]  Because this Court had already considered the FSA's applicability, re-sentencing is not warranted.  Thus, the United States respectfully requests that this Court reconsider its previous decision.[2]

---

[1] Miller brought similar claims in motions filed under 18 U.S.C. § 3582 and 28 U.S.C. § 2255.  For the reasons stated below, Miller is not entitled to relief under either motion.

[2] The government maintains and reasserts all previous arguments set forth in its previous filings relating to Miller's motions for relief.

**FACTS AND PROCEDURAL HISTORY**

A jury convicted Miller of being part of a drug conspiracy (Count 1) and obstruction of justice (Count 6). Rec. Doc. No. 245. Because a sentencing enhancement notice was filed prior to trial pursuant 21 U.S.C. § 851, Miller faced a sentence of at least 20 years and maximum of life imprisonment as to Count 1, based on the penalties that existed at the time Miller committed the offenses. *See* PSR of Sept. 1, 2010, ¶ 117; 21 U.S.C. § 841(b)(1)(A) (2010). Following his conviction but before he was sentenced, the FSA was enacted on August 3, 2010.

In preparing the PSR, the United Stated Probation Office calculated the sentencing guidelines to be 168-210 months. PSR of Sept. 1, 2010, ¶ 119. Probation also prepared an addendum containing another calculation based on the recently passed FSA, which reduced the ratio between powder and crack cocaine from 100:1 down to 18:1. *See* PSR Addendum. This addendum stated that the guideline range under the FSA was 110-137 months in prison, but that the mandatory minimum was 240 months. *Id.*

The Court sentenced Miller on September 29, 2010 to 240 months on Count 1 and 210 months on Count 6.[3] *See* Rec. Doc. Nos. 244, 245. All but 60 months of the term of imprisonment imposed on Count 6 were to run concurrently with the sentence imposed on Count 1, which led to a total of 300 months imprisonment. *Id.* This was higher than the advisory guideline range.

The FSA's application was an issue at sentencing. Ultimately, the Court concluded that Miller's crimes were governed by the law in effect at the time he committed them. *See*

---

[3] Co-defendants Dalton Bennett and Lance Bennett were each sentenced on September 15, 2010. They each received a sentence of life imprisonment. Rec. Doc. Nos. 231, 232, 233, 234.

2

Sentencing Transcript (Rec. Doc. No. 278, p. 12). However, the Court stated that, even had the FSA applied, the sentence would have been the same, stating:

> To the extent that the FSA did result in a favorable criminal change in the law which would apply to this defendant and which would have some impact on what his guideline range is, the Court notes that the sentencing guidelines are, in fact, advisory now under *Booker* and *Fanfan*. And thus, the Court could decide to impose a sentence on the defendant that is greater or lesser than the applicable guideline range as long as it did not exceed the statutory maximum, if it is found that the guidelines did not adequately take into consideration certain other relevant facts about the defendant or about the crime with which he has been convicted in this case.

Sentencing Transcript, pp. 12-13. Thus, the Court clearly realized the guideline calculation of 168 – 210 months was advisory, and the Court had the authority to impose a higher sentence. While the Court ultimately determined that Miller should be sentenced according to the law and penalties that existed at the time of the offense, *id.* at 13, the Court negated any relevance such application may have had when it stated:

> This Court will also note that regardless of its ruling on that particular issue, even if it were, **even if the FSA was applied retroactively**, such that the minimum sentence would be reduced in this case under that theory, **the Court's sentence would remain unchanged**.

*Id.* at 13 (emphasis added).

Moreover, in imposing the 300-month sentence, the Court specified that the final sentence was proper in light of the statutory factors of 18 U.S.C. § 3553. Sentencing Transcript, p. 24. The Court considered that Miller was not only involved in drug trafficking but had taken part in phone calls with an incarcerated co-defendant in which he discussed further distribution of drugs and a plan to provide a false affidavit. *Id.* at 24-25. The Court also considered the defendant's multiple convictions, the first of which occurred when he was 13 years old. *Id.* at 25. In reference to the total sentence, which was above the advisory guideline range, *id.*, the Court stated:

> The Court finds that the sentence imposed, which represents a substantial term of imprisonment, reflects the nature and specific circumstances of this offense, the seriousness of this offense – and I might add parenthetically that the two co-defendants who went to trial in this case each received life sentences – as well as the defendant's extensive criminal history.
>
> The sentence promotes respect for the law, provides just punishment, affords adequate deterrence and protects the public. It is also meant to avoid unwarranted sentencing disparities amongst the co-defendants.

Sentencing Transcript, pp. 25-26. Also, with reference to the FSA's applicability, the Court again stated, "The Court would further note, and I think I have said it earlier that this sentence would be the sentence in terms of the incarceration **regardless of how the Court ruled on the issue of the applicability of the FSA**." *Id.* at 25 (emphasis added).

Miller filed a direct appeal, along with co-defendants Lance Bennett and Dalton Bennett, but did not assert a FSA challenge to his sentence. The Fifth Circuit affirmed this Court's sentence, stating:

> We are satisfied upon reviewing Miller's sentencing hearing that the district court took the § 3553(a) factors into account in determining his sentence. Moreover, avoiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration. Thus, Miller's sentence was not substantively unreasonable, and the district court did not abuse its discretion in running 60 months of Miller's sentence on Count Six consecutively to his 240–month sentence on Count One.

*United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) *cert. denied*, 132 S. Ct. 1875 (2012) and *cert. granted, judgment vacated,* 133 S. Ct. 71 (2012) and *cert. denied*, 132 S. Ct. 2698 (2012) (internal citation omitted). On May 29, 2012, the Supreme Court denied Miller's petition for writ of certiorari. 132 S.Ct. 2698 (2012).

Miller filed motions under 18 U.S.C. § 3582 and 28 U.S.C. § 2255 in which he sought amendment of his sentence based on the FSA. *See* Rec. Doc. Nos. 317, 326. On December 2,

2013, this Court granted the motions to the extent they sought re-sentencing under *Dorsey*. Order and Reasons, p. 7.[4]

## LAW AND ARGUMENT

In granting defendant's § 2255 motion, this Court relied on *Dorsey*, 132 U.S. 2321, which held that the more lenient penalty provisions of the FSA apply to defendants like Miller, who committed their crimes before August 3, 2010, but who were sentenced after that date. *See* Order and Reasons, p. 7. The Court determined that because "Miller was . . . not sentenced until September 29, 2010, after the FSA became effective . . . re-sentencing is appropriate under *Dorsey*." *Id.*

However, re-sentencing is not warranted under *Dorsey* because this Court had already considered the potential application of the FSA when it originally sentenced Miller. As the Court's pronouncement made clear, Miller's sentence was not imposed on the basis of pre-FSA mandatory minimums or guideline ranges. His sentence was not imposed contrary to, or in violation of the law. Independent of the pre-FSA laws and guideline ranges, this Court took into account the factors identified in 18 U.S.C. § 3553(a) in imposing the upward variance, which has been affirmed by the Fifth Circuit. *See United States v. Bennett et al.*, 664 F.3d 997, 1015 (5th Cir. 2011), *cert. denied*, *Miller v. United States*, 132 S.Ct. 2698 (2012).[5]

---

[4] The Court denied Miller's requested relief based on his claims that the government elicited and relied on false testimony.

[5] The Supreme Court vacated Lance Bennett's sentence following its *Dorsey* decision. *Bennett v. United States*, 133 S.Ct. 71 (2012). On remand, the Fifth Circuit nonetheless affirmed Bennett's life sentence because this Court had "explained that, considering the 18 U.S.C. § 3553(a) factors, it would have departed from the Guidelines and imposed the same sentence even if the FSA applied." *United States v. Bennett*, 485 Fed.Appx 673, 675 (5th Cir. 2012). It also noted that Miller had not challenged his sentence under the FSA, and, therefore, *Dorsey* did not disturb its prior opinion affirming his sentence. *Id.* at 674 n.1.

**I.        This Court stated that the same sentenced would apply under the FSA.**

Although the FSA certainly applies to Miller in light of *Dorsey*, this Court already considered the FSA's applicability when it originally sentenced Miller. Thus, a re-sentencing hearing is not mandated under *Dorsey* in this matter because of this Court's statement that it would have imposed the same sentence under the FSA. The Fifth Circuit affirmed this Court's sentence of Miller's co-defendant Lance Bennett for this same reason.[6] Unlike Miller, Lance had asserted a FSA challenge to his life sentence on appeal. *See Bennett*, 664 F.3d at 1014-15. The Fifth Circuit affirmed, *id.* at 1015, but the Supreme Court vacated the sentence and remanded in light of *Dorsey*. *Bennett v. United States*, 133 S.Ct. 71 (2012). Reviewing the sentence under *Dorsey*, the Fifth Circuit nonetheless affirmed Lance's life sentence without any further remand for re-sentencing. *United States v. Bennett*, 485 Fed.Appx. 673, 675-76 (5th Cir. 2012). In so doing, the panel acknowledged this Court's detailed reasons for sentencing and held, "Although the district court sentenced [Lance] to a term of life imprisonment pursuant to the mandatory life provision, it explained that, considering the 18 U.S.C. § 3553(a) factors, **it would have departed from the Guidelines and imposed the same sentence even if the FSA applied**." *Id.* at 675 (emphasis added). The Fifth Circuit stated that "[t]he district court justified Bennett's life sentence during his sentencing hearing" by giving multiple reasons. *Id.* "Given the district court's due consideration of the § 3553(a) factors, the serious nature of [Lance]'s offense, and his extensive criminal history, [the Fifth Circuit] conclude[d] that the district court did not abuse its discretion in imposing a term of life imprisonment." *Id.* at 676.

---

[6] For simplicity and to avoid confusion, this memorandum will refer to Lance Bennett as "Lance" and Dalton Bennett as "Dalton."

This decision by the Fifth Circuit, following the Supreme Court's instructions in *Dorsey*, supports this motion for reconsideration and provides reasons why Miller is not entitled to re-sentencing. As with Lance, the Court gave several reasons justifying its 300-month sentence, and the reasonableness of that sentence has already been affirmed. *Bennett*, 664 F.3d at 1015. As with Lance, this Court specifically stated that Miller's sentence would be the same even if the FSA applied. *See* Sentencing Transcript, pp. 13, 25. Thus, as the Fifth Circuit determined with Lance, re-sentencing is not warranted for Miller following *Dorsey*.

II. **The facts of *Dorsey* are distinguishable from Miller's case.**

Additionally, the underlying facts of *Dorsey* do not compel re-sentencing in this matter. In that case, defendant Hill was sentenced after the FSA's enactment. *Dorsey*, 132 S.Ct. at 2329 The district court concluded that the penalties in place at the time of the offense applied and sentenced Hill to the statutory mandatory minimum of 10 years imprisonment. *Id.* at 2329. However, the district court "stated that, if he thought that the Fair Sentencing Act applied, he would have sentenced Hill to that Act's 5–year minimum." *Id.*[7]

Contrary, to defendant Hill, this Court did not state that it would have sentenced Miller to a lesser term had it believed the FSA applied. Instead, this Court considered the possible applicability of the FSA and stated at least twice during the sentencing proceeding that the 300-month sentence would have been the same. This Court's sentence left no doubt that Miller's sentence would be 300 months imprisonment regardless of whether the FSA applied. As such, re-sentencing is not appropriate simply because *Dorsey* has made clear that the FSA does apply.

---

[7] The district court that sentenced defendant Dorsey likewise concluded that the older penalties applied. *Dorsey*, 132 S.Ct. at 2329.

**III.		Re-sentencing would create disparities and inconsistencies.**

To grant Miller a re-sentencing would create unwarranted disparities in both sentences and in the application of the law among co-defendants that were convicted of the same conspiracy. The Fifth Circuit has already relied on this Court's statement that the sentence would have been the same if the FSA applied in affirming Lance's life sentence without the need to remand for resentencing. *Bennett*, 485 Fed.Appx. at 675. Granting Miller's motion creates a legal inconsistency in which its statement that the same sentence would be imposed under the FSA was relied on by the Fifth Circuit in Lance's case, but is being ignored by this Court in Miller's case. It also grants a benefit of re-sentencing to Miller, who did not raise this issue for review on direct appeal, while such relief is foreclosed to Lance who did raise the issue for review on direct appeal, had his sentence vacated in the Supreme Court, only to ultimately have is life sentence affirmed without re-sentencing based on this Court's statement that it would have imposed the same sentence under the FSA.[8] Ultimately, it rewards Miller for not raising a sentencing issue on direct appeal that could have been raised on direct appeal. *See United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

Further, granting Miller's motion and setting the matter for a full re-sentencing hearing, in which the Court could impose a lower sentence, creates a possible serious disparity between the sentences of Miller and his co-defendants Dalton and Lance. Although all have similarl criminal records and were found guilty of the same offenses, Dalton and Lance would serve life in prison, but Miller could serve significantly less. This Court's decision to re-sentence Miller after such sentence has already been affirmed contravenes the desire of avoiding unwarranted

---

[8] Had Miller sought direct review of his sentence on the ground that the FSA applied, as did Lance, the Fifth Circuit on remand almost certainly would have ruled consistently and affirmed Miller's sentence based on this Court's statements at sentencing as it did with Lance's sentence.

sentencing disparities as stated by Congress, *see* 18 U.S.C. § 3553(a)(6), the Supreme Court, *see Dorsey*, 132 S.Ct. at 2333, and this Court's own reasons for imposing the 300 month sentence. *See* Sentencing Transcript (Rec. Doc. No. 278, p. 26).

Moreover, granting re-sentencing in this matter upsets society's interest in the finality of convictions and sentences where there has been no factual or practical change in circumstances. Because the Court stated it would have imposed the 300-month sentence if the FSA applied, and now the Supreme Court has clarified that the FSA indeed does apply, there is no reason justifying re-sentencing in this matter. Of course, while the Court has the discretion "to correct an acknowledged and obvious mistake" in sentencing, *United States v. Lopez*, 26 F.3d 512, 518 (5th Cir. 1994), such discretion "does not extend to a situation where the district judge simply changes his mind about the sentence." *United States v. Ross*, 557 F.3d 237, 240 (5th Cir. 2009) (*citing United States v. Cook*, 890 F.2d 672, 675 (4th Cir. 1989)). In this matter, re-sentencing is not warranted following *Dorsey*, which is the sole reason this Court granted Miller's motion. Order and Reasons, p. 7.

Finally, granting Miller's motion and ordering re-sentencing in this situation would send the wrong message to other gang members in the city, especially the violent 3NG gang, whose members have recently been indicted on state murder and racketeering charges. At trial Miller was identified as a member of this gang. He committed serious crimes. There is no reason why Miller should receive a re-sentencing hearing solely because of *Dorsey*'s holding that the FSA applies to someone in Miller's position when this Court has already stated that it would have imposed the same sentence had the FSA applied.

**IV.**     **Miller's claim under § 2255 is procedurally defaulted.**

This Court noted that, because it found that re-sentencing was appropriate, it was not necessary to "decide which statute provides the more appropriate vehicle for bringing such a

9

claim." *See* Order and Reasons, p. 7 n. 2. However, as the Court has set the matter for re-sentencing and has given Miller the opportunity to appear, *see id.* at 7, it seems as though the Court ultimately granted the § 2255 motion and not his § 3582 motion, "because a sentence modification under § 3582(c)(2) does not constitute a complete re-sentencing." *United States v. Cooley*, 590 F.3d 293, 295 (5th Cir. 2009).

As argued in the government's original opposition, Miller's challenge to this upward Court's upward departure or variance does not implicate any constitutional, statutory or jurisdictional claim because it did not exceed the statutory maximum and, therefore, cannot be raised in a § 2255 proceeding. *See United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994). Miller should have addressed the FSA's application on direct appeal, as did Lance.

"Section 2255 does not reach errors not of a constitutional or jurisdictional magnitude that could have been reached by a direct appeal." *Seyfert*, 67 F.3d at 546. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.* at 167-68. Miller cannot show cause for not raising this issue on direct appeal as his co-defendant Lance did. Because this Court made clear that the sentence would have been the same under the FSA, he cannot show actual prejudice. As a result, § 2255 relief is not appropriate.

**V.      Miller is not entitled to re-sentencing under 18 U.S.C. § 3582.**

Vacating Miller's sentence and ordering a full re-sentencing is not proper relief under 18 U.S.C. § 3582(c)(2). As the Supreme Court has stated,

> By its terms, § 3582(c)(2) **does not authorize a sentencing or resentencing proceeding**. Instead, it provides for the "modif[ication of] a term of imprisonment" by giving courts the power to "reduce" an otherwise final sentence in circumstances specified by the Commission. Compare 28 U.S.C. § 994(a)(2)(C) (referring to § 3582(c)(2) as a "sentence modification provisio[n]"), with 18 U.S.C. § 3742(f) (authorizing courts of appeals to remand "for further sentencing" upon a finding of error), and § 3742(g) (establishing the terms of "sentencing upon remand" and describing the proceeding as a "resentenc[ing]" (capitalization omitted)). It is also notable that the provision applies only to a limited class of prisoners—namely, those whose sentence was based on a sentencing range subsequently lowered by the Commission. Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and **not a plenary resentencing proceeding**.

*Dillon v. United States*, 130 S. Ct. 2683, 2690-91 (2010) (emphasis added). The United States Sentencing Guidelines also specifically state that § 3582(c)(2) proceedings do not constitute full re-sentencings. U.S.S.G. § 1B1.10(a)(3). More support that the matter is not a "re-sentencing" but only a modification is found in Rule 43 of the Federal Rules of Criminal Procedure, which requires a defendant's presence at sentencing but not in proceedings under 18 U.S.C. § 3582(c)(2). Moreover, as U.S.S.G. § 1B1.10(b)(1) states, when determining the amended guidelines and whether and to what extent a reduction is warranted under § 3582(c)(2), a sentencing court is to leave all other guideline application decisions unaffected. A sentencing reduction under § 3582(c)(2) does not entail revisiting factual determinations made at sentencing. *United States v. Williams*, 477 Fed.Appx. 190, 191 (5th Cir. 2012).

In this case, although the actual amended guideline were published a few weeks after Miller was sentenced, the Court had the PSR addendum that noted what the FSA-amended guideline range would be. The Court still decided to impose a sentence higher than the guideline range and stated the sentence would be the same under the FSA. The Court already considered sentencing factors under § 3553(a). These factual decisions and guideline applications are unaffected by in § 3582(c)(2) proceedings, U.S.S.G. § 1B1.10(b)(1), and should not be revisited

in any modification. *Williams*, 477 Fed.Appx. at 191. As a result, the upward-variance aspect of his sentence that Miller seeks to correct was not affected by FSA guideline amendments, they are outside the scope of the proceeding authorized by § 3582(c)(2), and the Court should not address them in such a proceeding. *See Dillon*, 130 S. Ct. at 2694.

## CONCLUSION

For the above-mentioned reasons, the government respectfully requests that this Court reconsider its ruling, alter and amend its Order, and deny Miller's motions.

    Respectfully submitted,

    KENNETH ALLEN POLITE, JR
    UNITED STATES ATTORNEY

    s/ Maurice E. Landrieu
    MAURICE E. LANDRIEU (#22104)
    Assistant United States Attorney
    650 Poydras Street, Suite 1600
    New Orleans, Louisiana 70130
    Telephone No. (504) 680-3015
    maurice.landrieu@usdoj.gov